## John Hutchings v. Edward W. Ladd et al.

*Forwarder: Instructions: Clerk: Custom.* A forwarder had property delivered to his clerk to be sent by a common carrier to a certain point and there delivered to another carrier, with directions qualifying or imposing restrictions upon the delivery by the latter. *Held*, that the sending forward of such instructions with the property is fairly within the general scope of the forwarder's business, and his clerk must therefore be presumed to have had authority to make a contract to that effect.

A local custom not to make such contracts, .or instructions to the clerk to that effect can not be binding upon a party who has no knowledge of such custom or instructions.

*Forwarder:· Ratification of Clerks acts.* The Circuit Judge charged that there was evidence tending to show the making by the defendant of the agreement the plaintiffs had counted upon.

The evidence showed that the property was duly received, with written instructions, and the defendant forwarded them, complying with the direction in all respects, except in not accompanying them with a statement of plaintiffs' charges. *Held*, That the jury were fairly at liberty to infer from the evidence that this was done by the defendant in person, and that he was aware of the instructions, and if so, they were right in holding him bound by these instructions. If the clerk exceeded his authority, the defendant, when it

was brought to his notice, was at liberty to affirm or disaffirm it, but he could not affirm it in part and disaffirm the remainder without the consent of the plaintiffs. The defendant entered upon the performance of the contract without apprising plaintiffs that he disavowed any portion of it, and if he did this with the knowledge of the facts, as the jury might infer that he did, then he must be held to have affirmed the clerk's action.

*Forwarder:   Damages for neglect in obeying instructions.*   The instructions in the case were that defendant should deliver certain goods to the express company, and that said company should deliver them to one Martin on receiving from him a balance due on the goods.

Defendant delivered them to a warehouseman without the instructions, and who in turn delivered them to Martin without collecting the money. Martin was then insolvent. The jury under the charge of the court gave a verdict for plaintiff for the full amount of the balance due.

*Held,* That this was correct. The damages which the plaintiffs have suffered are the very damages which were within the contemplation of the parties and against which the contract was to protect them. That damage can not be said to be too remote for recovery, on the breach of a contract proper in itself, which was the only damage the parties had in view in making the contract, and to prevent which was the only occasion for the agreement which has been broken.

*Heard April 15th.   Decided April 21st.*

Error to Wayne Circuit.

This was an action to recover alleged damages against plaintiff in error, who undertook to forward goods to Saginaw City, but failed to send certain instructions of plaintiffs concerning the collection of money due upon said goods.

The declaration contained a single count which alleged that Nov. 2, 1865, defendant was a forwarder, engaged in the business of forwarding goods from the City of Detroit to Saginaw City, Michigan, and that on that day plaintiffs delivered to defendant certain goods to be by him forwarded to Saginaw City to the American Express Company, to be by said express company delivered to Joseph Martin, on their receiving from said Martin $64.76, and that the defendant undertook to forward said goods as agreed, and to send with said goods to said express company instructions directing them to deliver said goods to one Joseph Martin on receiving from him the said sum of $64.76, which, it is alleged, was due to plaintiffs from said Martin as part of the purchase price of said goods, and which constituted a lien thereon.

The plea was the general issue.

The justice gave judgment in favor of defendant and plaintiff appealed. The trial in the Circuit Court was by a jury, and resulted in a verdict and judgment for plaintiffs for the full amount claimed. On the trial, exceptions were taken by the defendant to certain rulings of the court excluding evidence offered by defendant, and to instructions given to the jury, and the case comes up for review as to the correctness of such rulings and instructions.

The following are the assignments of error:

1. In the sustaining of the objection of the defendants in error to the evidence offered by the plaintiff in error tending to prove:

"That it was not usual or customary for common carriers at Detroit to receive goods for carriage, and give bills of lading therefor, with instructions to the consignee inserted therein, similar to the instructions which it is alleged in plaintiff's declaration the defendant undertook to send with the goods in question."

2. In the sustaining of the objection of the defendants in error to the evidence offered by the plaintiff in error tending to prove—

"That it was not usual or customary for forwarders in the city of Detroit to receive goods to be forwarded, and undertake to accompany them with instructions similar to the instructions which it is alleged in plaintiff's declaration the defendant undertook to send with the goods in question."

3. In the sustaining the objection of defendants in error to the evidence offered by the plaintiff in error tending to prove—

"That it was not usual or customary for said defendant to receive goods to be forwarded and undertake to accompany them with instructions similar to the instructions which it is alleged in plaintiffs' declaration he undertook to send with the goods in question."

4. In the sustaining of the objection of defendants in error to the evidence offered by the plaintiff in error tending to prove—

"That defendant had prior to the reception of the goods in question instructed his clerks not to receive goods to be forwarded and undertake to accompany them with instructions similar to the instructions which it is alleged by plaintiff's declaration the defendant undertook to send with the goods in question."

5. In the giving of the following instructions by the court to the jury, to wit:

"That there was evidence fairly tending to show the making of the agreement by defendant counted upon in said plaintiff's declaration, and that it was for them to say from such evidence whether or not said agreement was in fact made."

6. In the giving of the following instructions by the court to the jury, to wit:

"That there was evidence tending to show that by the breach of such agreement on the part of said defendant the plaintiffs had suffered damage to the amount of the sum which was to be collected from said Martin upon delivery to him of said goods, to wit: $64.76, and that if they should find such agreement to have been made, and that it had been so broken, and plaintiffs had by reason thereof suffered such damage, their verdict might be for the said plaintiffs for said sum of $64.76 and interest."

*Newberry & Pond,* for plaintiff in error.

1. The evidence, the exclusion of which is the basis of the first, second and third assignments of errors, was clearly admissible.

It had appeared by plaintiff's evidence that the alleged contract, if made, was made on behalf of defendants by a clerk employed in his warehouse, and hence the question of the authority of said clerk to make such contract was a

material one; and the only evidence as to his authority, given by the plaintiff, consisted in the fact that he was such clerk, and as such, charged with the duty of receiving goods to be forwarded, and to give receipts therefor, and hence,

*Prima facie*, his authority, implied by law from the nature of his employment, was to make such contracts in relation to the forwarding of goods, and only such contracts as it was usual and customary for forwarding merchants at Detroit to make.— 11 *Cush.* 586.

The evidence offered was therefore admissible to show that the contract alleged to have been made by the clerk was beyond his authority, as implied from the nature of his employment, to make.

2. The evidence referred to by the fourth assignment of error was, perhaps, unnecessary; but if, as we have contended above, there was no implied authority in defendant's clerk, from the nature of his employment, to make the contract in question, it was clearly admissible to negative any claim or pretence of express authority.

3. There are two errors involved in the instruction complained of by the fifth assignment of errors, to wit:

*First.* In its assertion that there was evidence tending to show the agreement counted upon.

*Second.* In submitting it to the jury to say whether or not such agreement was in fact made.

There was no evidence tending to show that the contract counted upon was made.

The only evidence of any agreement was the receipt signed by Hutchings & Co. and the paper left by Ladd & Co. with Hutchings & Co.'s clerk at the time of the delivery of the goods.

And we submit that these papers do not tend to prove the agreement counted upon.

The agreement which they show to have been made by Hutchings & Co. is either,

1. To transport the goods to Saginaw, and upon delivery there to the consignee, to collect their (*Hutchings & Co.'s*) charges, $64.76; or,

2. To transport the goods to Saginaw, and deliver them to the American Express Company for delivery to Martin, the ultimate consignee, upon the payment of their (*Hutchings & Co.'s*) ·charges, $64.76.

By no recognized canon of construction can the agreement counted upon be worked out of these papers.

4. The error of the charge upon which is predicated the sixth assignment of error lies in the assumption that the failure of Hutchings to send with the goods the instructions to the express company to deliver them to Martin upon payment of the $64.76 caused their delivery by the carrier directly to Martin without collecting the sum.

Viewed legally, there can be seen no connection by way of cause and effect between the two things.

The instructions were designed not for the carrier to enable him to determine to whom to deliver the goods, but for the express company to guide them in their action after the goods had come to their possession.

And Hutchings, consistently with the agreement as counted upon and with the evidence as to it, might have sent the instructions to the express company along with the goods in a sealed envelope.

As the goods were consigned to the express company, the carrier was as much bound to deliver them to such company without knowing of the instructions, as he would have been had he known of them.

The loss of the $64.76, therefore, happened from the mis-delivery of the goods by the carrier and not from the failure of Hutchings & Co. to send the instructions to the express company, and plaintiff at the most was entitled but to nominal damages.

*Walker & Kent*, and *G. V. N. Lothrop*, for defendants in error.

1. The reception of goods by a forwarder, accompanied with instructions as to the manner of forwarding them, without objection, and the actual forwarding of the goods, not only tend to show, but conclusively show, a contract to forward in accordance with the instructions.

2. The contract in question was made by the agent of the defendant below, and it will not be contended, we think, that the 'evidence ruled out could have been admissible for any other purpose save to show a want of authority in the agent.

It is absurd to say that a man who makes a contract can avoid it by showing that the contract, is a very unusual one, either with himself or anybody else.

In the case at bar, the stone were received and receipted for by the clerk whose business it was to attend to such matters. It does not appear by whom they were forwarded, but it must be presumed to have been done by defendant's agent for this purpose, if not by himself.

Now, defendant's agents must be presumed to have had authority to make any contract which was fairly within the scope of a forwarder's business. The putting in the bill of lading a direction to the consignee that there are certain charges to be paid before the property is delivered is so simple a thing that we think an agent of a forwarder would be presumed to have the power to make a contract to do this, if such a thing had never been heard of before. The contract made was reasonable, and what plaintiffs below may have well presumed to be within their powers.

If this be true, it can make no difference "that it was not usual or customary for common carriers at Detroit to receive goods for carriage and give bills of lading therefor, with instructions to the consignee inserted therein, similar to the instructions which it is' alleged in plaintiff's declaration the defendant undertook to send with the goods

in question," or that it was not customary for other forwarders or defendant himself to send forward goods with such instructions.

The power of defendant's agents to make a contract binding upon their principal could not depend upon the question whether the contract was one made often or not. If it were a contract reasonably and fairly within the scope of the forwarding business, it is enough, though it were not made once a year, or indeed ever before.

The private instructions which defendant gave his clerk of course can have no bearing with reference to their powers in their dealings with plaintiffs.

3. It is admitted that defendant did not fulfill the contract in question, and that plaintiffs suffered the loss of their charges, $64.76. But it is urged that the loss resulted not from the failure of defendant, but the warehouseman to whom the goods were delivered by the carrier.

But admitting this, it can not release the defendant from the consequence of his breach of contract. The warehouseman can just as well say, if defendant had performed his contract, I should have performed mine, and so each be excused by the other's fault, and the plaintiffs left remediless.

Plaintiffs had a right by contract with defendant to provide against the carelessness or ignorance of the carrier and his agents, and to have such instructions sent along with the goods as to make their non-delivery to the express company utterly inexcusable.

The failure of the defendant to carry out this contract, naturally if not necessarily, resulted in the loss sustained.

In a considerable number of parallel cases it is settled that a breach of instructions makes the bailee liable for any loss which subsequently happens in the dealing with the goods.— 20 *Ill.* 375; 11 *Cush.* 102; 37 *Ala.* 505; 3 *Mich.* 268; 16 *N. Y.* 515.

COOLEY CH. J.

I am not satisfied that there is any thing in the contract upon which the plaintiffs below declared, which is beyond the scope of the ordinary business of the forwarder; and if not, there can be no question of the defendant's liability upon it, since his clerk, left in charge of the receipt of goods, must be presumed to have authority to make all such contracts as are usual and proper in the business in which he was employed; and this presumption, in the absence of any knowledge by plaintiffs of restrictions upon such authority, must be conclusive.

It was always the duty of the forwarder to accompany the delivery of goods to the carrier with such instructions, communicated to him for the purpose, as should seem necessary to ensure their carriage and delivery according to the wishes of the consignor; and these instructions were expected to govern the action, not only of the first, but of any subsequent carrier, until the goods should reach the hands of the ultimate consignee. It is true that carriers formerly were not expected to be collecting agents, nor forwarders to send on bills for collection; but when a new element was introduced into the carrying trade of the country by the establishment of organizations who not only carried property, but also acted as agents for the consignor in collecting from the consignee the price thereof, the proper and safe transaction of this business required that information respecting the charges, with the proper instructions not to deliver until they were paid, should accompany the property itself; as the delivery would be expected to be unconditional unless such instructions were had.

The bringing of this new element into the carrying trade does not, of course, oblige the ordinary carrier to become a collecting agent also; but when his operations extend over a part of a line where goods are to be sent, and he is to be the medium of their delivery to an organization which is both carrier and collecting agent, there is nothing

in the nature of the necessary instructions to such second carrier which makes them foreign to his business, or which makes it improper for the forwarder to send or the carrier to take them.   Such instructions are not of a new class or species from those which it is customary for a forwarder to insert in the bill of lading; they pertain to the carriage and delivery; and they can no more be considered aside from his ordinary business than would any other direction be, which did not happen to be usual in former times.   A separate bill is not necessarily sent; and it is evident from the manner in which Mr. Ladd prepared the papers, that he neither expected nor desired a separate bill to be sent in the present case.

The case, then, plainly stated is this:  A forwarder has property delivered to his clerk to be sent by a common carrier to a certain point, and there delivered to another carrier, with directions qualifying or imposing restrictions upon the delivery by the latter.   I think the sending forward of such instructions with the property is fairly within the general scope of the forwarder's business, and that his clerk must, therefore, be assumed to have had authority to make a contract to that effect.   Undoubtedly the forwarder may decline to make any such contract; but a local custom not to make them, or instructions to the clerk to that effect, can not be binding upon a party who has no knowledge of such custom or intsructions.   He deals with one who he has a right to assume is vested with authority to make any proper contract concerning and properly connected with the forwarding of goods; and this is one of that character.

But if I thought differently upon this point, I should still think the Circuit Judge was correct in charging the jury that there was evidence fairly tending to show the making by the defendant of the agreement the plaintiffs had counted upon.   The receipt of the property by the defendant's clerk under the special instructions is not

disputed; but his authority to consent to send as directed is denied. The instructions to him were in writing, and they constituted the only means, so far as the jury were informed, by which the defendant was to ascertain who was the consignee, or to what place the property was to be sent. It is admitted that after the clerk had received the property under these instructions, the defendant forwarded them by common carrier to Saginaw, complying with the directions in all respects except in not accompanying them with a statement of the plaintiffs' charges. It is not indeed stated that this was actually done by the defendant in person, instead of by his clerk or servant, but I think the jury were fairly at liberty to infer this from the evidence. And if so, they must also infer that he was aware of the instructions; and if he was, and saw fit to forward the property at all, I think the jury were right in holding him bound by those instructions. If the clerk exceeded his authority in making the special contract, the defendant, when it was brought to his notice, was at liberty either to affirm or repudiate it; but he could not affirm it in part and disaffirm the remainder without the consent of the plaintiffs. He entered upon the performance of the contract without apprising the plaintiffs that he disavowed any portion of it; and if he did this with knowledge of the facts, as the jury might fairly infer that he did, then he must be held to have affirmed the clerk's action. Whether the evidence in the case is sufficient to satisfy us on this point, is another question. I only say that I discover no error in the charge of the Circuit Judge upon it.

A question of more difficulty, perhaps, is whether the plaintiffs were entitled to recover any thing more than nominal damages for the breach of the agreement. In the court below they were allowed to recover the full amount of their charges against Martin, the ultimate consignee. It appears that the carrier did not deliver the property, according to his instructions, to the Express Company, but

handed it over directly to Martin.   Defendant claims that
the loss by the plaintiffs of their demand against Martin
was not the direct and natural result of the breach of con-
tract counted upon, but that if the instructions had been
sent and the carrier had disobeyed them, as he did those
actually received, the same result would have followed.   The
loss, therefore, it is said, happened not from the failure of
defendant to perform his contract, but from the mis-delivery
of the goods by the carrier.   The plaintiffs reply that the
carrier, not receiving any instructions which made the ex-
press company any thing more than mere agents for the
delivery to Martin, might well feel justified in making per-
sonal delivery without their intervention; and that it is
not to be assumed that he would have disobeyed directions
in which any one appeared to have a beneficial interest.
The defendant also claims that he would have complied
fully with the contract if he had forwarded the instructions
to the express company along with the goods in a sealed
envelope; but I think otherwise.   Instructions respecting
carriage and delivery are usually inserted in the bill of
lading; or so transmitted that each carrier through whose
hands they pass is informed of them; and that is the fair
import of a contract that they shall be sent with the goods.

Were, then, the damages of the plaintiffs too remote to
be legally chargeable to the breach of the contract?   In
determining this it may be well to bear in mind that the
very purpose of the plaintiffs in requiring the agreement
which has been broken, was to prevent the precise loss
which has been suffered.   The directions were to be sent
to prevent a delivery to Martin without payment of charges
whereby plaintiffs would lose their demand.   They were
not sent, that delivery was made, and the plaintiffs lost
their demand.   The damages which the plaintiffs have suf-
fered are the very damages which were within the contem-
plation of the parties and against which the contract was
to protect them.   How then can they be said to be too

remote to follow, legally, on breach of the contract? True, if some other things had not intervened, the loss might not have occurred; but that damage can not be said to be too remote for recovery on the breach of a contract proper in itself, which was the only damage the parties had in view in making the contract, and to prevent which was the only occasion for the agreement which has been broken. See *Hadley v. Baxendale*, 9 *Exch.* 341.

I find no error in the record, and think the judgment should be affirmed.

GRAVES J. concurred.

CHRISTIANCY J. did not sit.

CAMPBELL J.

I think that the memorandum left with Hutchings does not disclose any thing from which it can be inferred that he was expected to give any instructions to the American Express Company, who had no duties of carriage to perform. If it imposed any duty on him to make any provision for the collection of the bill of purchase, I think it was to include it in the amount to be collected by the carrier. The memorandum requires the money to be collected on delivery, and inasmuch as the only delivery which can be anticipated in a forwarding contract is a delivery by the carrier, it seems to me that is the utmost effect which can be given to the receipt, and this is not the contract declared on. I have seen no authority which sanctions the idea that a bill of lading can properly include directions concerning the duties and responsibilities of consignees after delivery to them, and I believe it to be unprecedented.

But if the contract should be deemed proved as alleged, the damages in no sense resulted from the breach declared on. The carrier undertook to deliver the property to the

American Express Company, and there was evidence from which it was probable that if the goods had been delivered to them there would have been no loss. At all events, until delivered to them, there could be no damage caused by failure to notify them what steps to take in collecting the bill from Martin. This loss may or may not have occurred had the carriers done their duty. Their knowledge of the conditions of the consignment would in no way have changed their duty, and the loss is no more the result of a failure to forward instructions, than it would have been had the vessel foundered. An agent is liable for anything which results from his fault, but he is not liable for anything not so resulting.

I think the judgment was erroneous.