## Case No. 8,283.

### LETTS et al. v. HACKETT.

[6 Chi. Leg. News, 283; Brown's Adm. 480.]

District Court, E. D. Michigan. March 9, 1874.

PRINCIPAL AND AGENT—LIABILITY OF OWNER OF VESSEL FOR FAILURE OF MASTER TO NOTIFY SHIPPER.

Liability of owner of vessel for fault of master in failing to notify the agent of the shipper of his leaving, so that he could have effected an insurance on the cargo.

The libel in this case is based upon a contract of affreightment of a cargo or cargoes of coal to be transported in respondent's vessels from Cleveland to Detroit, in November, 1872. A part of one cargo, about 295 tons, was taken on board respondent's barge Ontario, and the weather being threatening and the closing of the navigation imminent, the barge put to sea, and together with the cargo was lost. The loss was clearly by a peril of the sea, and no damages are claimed on that account. The cargo was not insured, however, and it is claimed on the part of the libelants that the failure to insure was owing to the neglect and misconduct of the master of the barge, and it is to recover damages on this account the suit was brought.

Libelants [Charles E. Letts and William A. Carpenter] were coal dealers in Detroit, and, as such, purchased coal in large quantities of the Pennsylvania Coal Company, in Cleveland; and they had a standing arrangement with the agent of the company there to insure for libelants all cargoes of coal shipped to them in vessels of a certain class, and

to which class the barge Ontario belonged. On application of the master of the barge to the agent of the coal company for a cargo for libelants, he was sent up the river about a mile, to take on a part of a cargo at the "Mahoning Shoots," so called, and was then to return to the company's docks near the mouth of the river, and complete his lading, which was to be 400 tons. After taking on about 295 tons at the Mahoning shoots, the barge came down for the purpose of completing her load, but could not lay at the company's dock for that purpose on account of the weather, and so laid up to a dock further up the river to await the abating of the storm. During the following night, the storm having abated, the master of the barge was notified by the tug Torrent, upon which he depended to make the voyage, that if he went with her he must get ready and put to sea at once. Close of navigation by the setting in of winter being imminent, the master of the barge decided to go with the Torrent, that being, as he believed, his only chance to reach Detroit (his home port,) that season, and he so left early next morning. The barge so left without completing her load, without a bill of lading, and without notifying the agent of the company; and the agent testifies that he had no knowledge of her having left until he heard of the catastrophe by which she was lost; and no insurance was effected.

The question is, is the respondent [Robert J. Hackett] liable for the loss on account of the failure to insure?

H. B. Brown, for libelants.
Wm. A. Moore, for respondent.

LONGYEAR, District Judge. The alleged faults upon which this action is based are all summed up in the failure of the master of the barge to notify the agent of his leaving, so that he could at once have effected an insurance on the cargo, as it is claimed it was his duty to do. It was said it was the duty of the master to complete his lading. This is important only because in that case the agent would probably have known of his leaving, and the amount of cargo to be insured. It was also said that it was the duty of the master to sign a bill of lading before leaving; but this was important only for the same reason as the other. Let it be conceded, therefore, that the duties of the master of the barge were as claimed; that he failed to discharge those duties without legal excuse; and that the failure to obtain insurance on the cargo was wholly owing to such failure on the part of the master, (as to which latter proposition, however, I think there is doubt,) and the important question which meets us at the threshold is, are the damages sustained by libelants legally chargeable to respondent under the allegations and proofs in the case? Whatever difficulty there may be, and it is often great, in determining what damages arising out of breach of contract, are sufficiently direct and immediate, and what are too remote to be allowed against a party so in default, the rule of law is well settled that the damages must in all cases be such as must have been in the contemplation of the parties when the contract was entered into. Sedg. Dam. 63–76; 2 Greenl. Ev. § 256, and note 6; Fox v. Harding, 7 Cush. 522; Hadley v. Baxendale, 9 Exch. 341, 354; Hutchings v. Ladd, 16 Mich. 493, 505.

The arrangement between libelants and the agent of the coal company in regard to insurance was entirely separate from and independent of the contract of affreightment, and there is no allegation and no testimony even tending to prove that respondent was informed or knew of its existence when the contract of affreightment was made, or afterwards. Under these circumstances it can not be said that damages arising out of a failure to insure could have been in the contemplation of the respondent when he entered into the contract of affreightment. Under the foregoing rule of law, therefore, respondent can not be held liable for the damages complained of. But even if the facts were such as to bring the libelants' case within the rule of law above stated as to damages, I think the libelants could not recover, because it is by no means certain that the insurance would have been effected if the barge had waited to complete her lading, or the agent had been notified of her leaving when she did leave. In order to insure it was necessary, of course, that the agent should ascertain the number of tons on board. The master of the barge testifies that when he had taken on what he did take on at the Mahoning shoots, he requested of the weigher a statement of the number of tons, and was informed by the weigher that he could not give it to him there, but it would be sent down to the coal company's office. This was not done until the next day, or next but one, after the barge had left and after the catastrophe had happened, when, of course, it was too late to insure. It is true, if the barge had waited to complete her lading, the information might have been received before she left; but the court would hardly hold a party liable upon a mere probability of that sort, especially in view of the apparent urgency of the necessity of the barge leaving when she did, and without completing her lading. But it is not necessary to put the decision upon this point. The first point is clearly sufficient to dispose of the case adversely to the libelants. The libel must be dismissed with costs to the respondent.