SAGINAW, TUSCOLA & HURON RAILROAD COMPANY v. WILLIAM T. CHAPPELL.

*Railroads—Agent in procuring aid subscription—Sunday contract.*

1. In an action by a railway company upon an aid subscription which defendant claimed was not to have been turned over to the company by the person who took it, except upon certain conditions, it could not be assumed by the court that such person was the agent of the subscribers rather than of the company; the question, if there was any dispute about it, would be one for the jury.

2. A principal is not bound by the act of a special agent when done in disregard of his instructions, unless perhaps where the principal's own negligence has enabled the agent to perpetrate a fraud thereby.

3. Equities subsequent to the execution of a subscription cannot arise against the subscriber if the beneficiary therein has never relied upon the subscription.

4. A railroad aid subscription signed on Sunday is prima facie void, and if the railroad company has not acted on it in good faith and without knowledge of the defect, it can only become valid by some distinct act of the subscriber upon a week day in delivering it, or authorizing it to be delivered.

Error to Saginaw. (Gage, J.) Jan. 22.—Jan. 28.

ASSUMPSIT. Defendant brings error. Reversed.

*Winsor & Snover* and *Wm. T. Mitchell* for appellant.

*Tarsney & Weadock* for appellee.

COOLEY, J. The plaintiff sued Chappell to recover his subscription of five hundred dollars to the following paper :

"For and in consideration of the construction of the Saginaw, Tuscola & Huron Railroad from East Saginaw through the counties of Saginaw, Tuscola and Huron to the village of Sebewaing in the county of Huron, we agree to pay to the order of E. T. Judd, treasurer of said company, the sum set opposite our respective names within thirty days after the rails shall be laid from East Saginaw to the said village of Sebewaing in the county of Huron. We also agree to sign a note of like import and terms when requested to do so by the said railroad company.
*Sebewaing, Huron Co. Mich., March,* 1881."

The subscription of the defendant to this paper was admitted : and it was also admitted that the railroad was completed from East Saginaw to Sebewaing more than thirty days before the suit was instituted. The principal ground of defense was that the paper when signed was deposited with one Liken who had acted in taking the subscription at the request of the president of the company, and that in his hands it was subject to certain expressed conditions regarding the location of the road and its depot at Sebewaing which had not been complied with so as to entitle the plaintiff to the paper. Incidentally it came out on the trial that the defendant had subscribed to five hundred dollars of the capital stock of the company which he understood was to take the place of the first subscription, but which he afterwards repudiated on the claim that the conditions under which the sub-

scription was made were not observed by the company. This suit was then instituted.

Defendant being a witness on his own behalf was asked by his counsel the following question: "At the time you signed that subscription of aid, on Sunday the 13th day of March 1881, what occurred between you and Mr. Liken in regard to your giving that aid ?" This was objected to, and the court ruled that defendant must first show Liken was authorized to make a stipulation for the company, or that the company accepted the subscription subject to conditions not expressed in it.

Counsel then stated that he proposed to show that it was not to be treated as a subscription; that defendant's name was to be stricken from the subscription list unless the route of the road and the location of the depot were satisfactory; and that no contract was ever completed. The court then inquired: "Do you propose to show that the subscription was left with Mr. Liken to be by him delivered to the company ?" Counsel replied: "We propose to show that Mr. Liken had the subscription in his possession all the time; that he was the custodian of it all the time it was being signed; and that it continued in his possession until after the merger. We propose to show that it being in Mr. Liken's custody when this defendant signed, that the understanding was that it was not to be binding, that it was not to be delivered, that his name was to be stricken from it unless a particular route of the road and location of the depot were satisfactory to the company for whom Mr. Liken was then taking the subscription." "We propose to show that the railroad company never saw this aid subscription until June, after the merger into stock, and that the contract for the construction of the road was made in June 1881; that the company never relied on this subscription or had seen it up to that time, and never acted upon it for months after the construction of the road was commenced."

*By the Court:* "I think the testimony is not material unless you first show that Mr. Liken was acting as agent for the railroad company. If he was simply a citizen there at Sebewaing, equally interested there with Mr. Chappell and

others, and they were together signing a subscription to induce a company to build a road there, and the defendant under those circumstances gave Mr. Liken his subscription on the condition that the depot should be located at a certain place, and Mr. Liken delivered it without stating the condition, the defendant would be bound by it. He ought to have seen that his agent carried out his instructions. You must first show that Mr. Liken was acting for the railroad company, and then the testimony would be proper."

To this counsel replied: "We think that we have shown that: that he took the subscription papers and went to Sebewaing at the request of the president of the road to raise this aid." The court responded: "Yes, but he was acting as a large property owner at Sebewaing. I don't think the testimony shows that he was acting as agent of the railroad company, so that he could bind the company by his acts."

The court thereupon overruled the defendant's offer of evidence. In doing so it was assumed—*first*, that Liken in taking the subscriptions was not the agent of the railroad company; and *second*, that if he was agent of the subscribers, and delivered the subscription in disregard of their instructions the subscribers were nevertheless bound by it.

The first of these assumptions covers a question of fact. The position of Liken in respect to the subscription would appear to have been somewhat ambiguous; but the fact of his being interested at Sebewaing would not preclude his being agent of the railroad company in getting the subscriptions. It was a matter in which the railroad company and the people of the town were mutually interested; and while the company might not be likely to employ any one to solicit subscriptions, there would be nothing strange or unprecedented in its being done; and if it were done, probably some one locally interested would be the most suitable and efficient agent for the purpose. But whether under the circumstances appearing in proof Liken was acting for the company or for the subscribers was a question the court could not decide, and the defendant had a right to take the judgment of the jury upon it.

The second assumption covered a question of law and was

erroneous. If Liken was the agent of the subscribers in respect to the delivery of the subscription, he was a special agent, and if he delivered it in disregard of his instructions, his principals were not bound thereby. This is familiar law: *Trudo v. Anderson* 10 Mich. 357; *Hutchings v. Ladd* 16 Mich. 493; *Atlas Mining Co. v. Johnston* 23 Mich. 36; *Reynolds v. Insurance Co.* 36 Mich. 131. A very strong illustration of the principle is seen in *Hall v. Parker* 37 Mich. 590, in which sureties were held not bound by a bond which they had signed and left to be delivered upon the condition, which was not observed, that the signature of another should be first obtained to it. The principle might not apply when the party by his own negligence had put into the hands of another the means of committing a fraud: *Brown v. Judge of Probate* 42 Mich. 501; and in this case if Liken in violation of his instructions had delivered the paper and the company had acted upon it in ignorance of the excess of authority, and under circumstances fairly charging the subscribers with negligence, it may be that they ought to be and would be held bound by their promises. But the defendant offered to prove that the company had not acted upon the subscription paper; and if this were true, no equities subsequent to its execution could have arisen against the subscribers.

At the conclusion of the evidence the court directed a verdict for the plaintiff. This direction assumed that the plaintiff had made out an unquestionable case. This was not the fact. The subscription was shown to have been signed by defendant on Sunday, and was therefore prima facie void. *Tucker v. Mowrey* 12 Mich. 378; *Winfield v. Dodge* 45 Mich. 355; *Brazee v. Bryant* 50 Mich. 136. Only some distinct act of the defendant on a subsequent day in delivering or authorizing another to deliver it could render it valid; at least in the absence of any evidence that the railroad company in good faith and without knowledge of the defect, had acted upon it.

The judgment must be reversed and a new trial ordered.

The other Justices concurred.