## A. HELM AND SON v. W. M. BRILEY.

(Filed September 5, 1906.)

1. PETITION —Demurrer —General. A petition wnich sets forth a cause of action upon a promissory note alleging that it was executed on August 4, 1902, and fell due September 20, 1902, a copy of which was attached to the petition and reads: "On September 20th, we promise to pay"—the year of maturity being left out, is good as against a general demurrer.

2. SAME—Under the requiremments of the Oklahoma statute that a demurrer shall specify distinctly the ground therefor, a question of defect of parties which is made a ground of demurrer, cannot be raised under a general demurrer alleging simply a want of facts sufficient to state a cause of action.

3. SUNDAY—CONTRACTS—Under the statutes of Oklahoma forbidding public traffic on the first day of the week, a debt created for the sale of a domestic animal cannot be enforced, unless there is such a subsequent recognition of the indebtedness on a secular day as will amount to an acknowledgment of indebtedness, and a promise at that time, either express or implied, to pay.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before Bayard T. Hainer, Trial Judge.*

*W. K. Moore,* for plaintiffs in error.

No appearance for defendant in error.

## STATEMENT OF FACTS.

This action was originally commenced in the probate court of Kay county to recover a balance due upon a promissory note, the material allegations of the petition, omitting the title, being in the following words:

"The plaintiff says there is due plaintiff from defendant, the sum of $60.00 on one certain promissory note bearing date of August 4, 1902, and due Sept. 20, 1902, a copy of which note is hereto attached, marked 'Exhibit A,' and made a part hereof. That there is credited on said note a payment of $10.00 leaving a balance due of $50.00."

The petition concludes with a prayer for judgment in the sum of $50.00 and interest thereon.

Exhibit "A" is in the following words:

"Newkirk, O. T.
"August 4, 1902.

"On Sept. 20 we promise to pay W. M. Briley the sum of sixty dollars for value received at the First National Bank, Newkirk.

"A. HELM & SON.

"August 7, cash paid $10.00."

The record does not show that any appearance was entered by defendant in the probate court, and on the 29th of Nov., 1902, judgment was therein rendered in favor of plaintiff for the amount then due upon the note. Thereupon within the proper time defendant appealed the case to the district court, and there filed a general demurrer to the petition. At the February term, 1903, the cause came on for hearing in the district court upon said demurrer, when the same was overruled.

Thereafter at said term the cause came regularly on for hearing, no other pleading having been filed by defendant,

when plaintiff introduced the note and testified that he was the owner and holder of the same, and that $10.00 was paid by defendant on August 7, 1902, to apply on the note.

The evidence on the part of the defendant disclosed the fact that on Sunday, the 3rd day of August, 1902, plaintiff sold to defendant a mule, taking the note now sued on in payment of the purchase price of the mule. That the note was dated on Monday, August 4th, but was actually given and the mule delivered on Sunday, the 3rd, and the $10.00 was paid to apply thereon on Thursday, August 7, 1902.

The evidence discloses that the trade was made, the mule delivered to Helm & Son and the note made, executed and delivered by them to Briley at the grading camp of Helm & Son, and not otherwise in a public manner, or at a public place.

This is the import of all the evidence in the case, and at its conclusion the court rendered judgment for the plaintiff for the amount due on the note, and for his costs. Whereupon the defendant filed his motion for new trial, which being overruled the cause comes to this court upon error.

Opinion of the court by

GILLETTE, J.: This was an action on a promissory note, as stated above.

To the petition of plaintiff setting forth said note a general demurrer was filed, which was overruled, and the plaintiff in error now urges in this court that because the note does not specify the year in which it shall become due, sufficient facts are not stated to entitle the plaintiff to recover.

The note was given August the 4th, 1902, and reads:

"On September 20 we promise to pay Wm. Briley the sum of $60.00 for value received. * * *"

We think this language fairly implies that the September following the execution of the note was the time intended by the parties when such instrument should become due. The petition alleged that it was due Sept. 20, 1902, beside at the time the court rendered judgment the court had before it the testimony of the defendant, A. Helm, who testified that the note was given for the purchase price of a mule, and that he gave the plaintiff a note due in 30 days for $60.00. This testimony fixed the year in which the note became due, leaving no uncertainty with reference thereto.

Under the allegations of the petition that it was given on August 4, 1902, and became due Sept. 20, 1902, we think the demurrer was properly overruled in the first instance, and the judgment of the court finding it due upon the proofs offered, was correct.

A second proposition presented by the plaintiff in error is that the suit was brought against A. Helm & Son when it should have been brought against A. Helm and W. S. Helm as co-partners under the firm name of A. Helm & Son, and upon this proposition it is urged that the court erred in overruling the demurrer to the petition. As before stated the demurrer was general, and this ground we think could not be taken under a general demurrer. If there was a defect of parties defendant the demurrer should have so specified, as the statute makes that a ground of demurrer, and further provides as follows:

"The demurrer shall specify distinctly the grounds of objection to the petition."

It is not sufficient to demur generally to a pleading, and under such demurrer to undertake to raise a question of jurisdiction, legal capacity, another action pending, or defect of parties.

Under the requirement of the statute that the demurrer shall specify distinctly the grounds therefor, it is not sufficient to demur upon one statutory ground and undertake to rely upon a different ground.

The rights of the parties upon demurrer will be adjudged only upon the grounds laid. All other grounds must be held to have been waived, and in this instance any supposed right to object to the sufficiency of the petition because of a defect of parties is waived because of a failure to specify that as a ground of demurrer.

The only other defense offered is that the note was executed and delivered on Sunday, and is in violation of the statute concerning Sabbath breaking, and is therefore void.

The note was given for a valuable consideration, and it is conceded is perfectly valid and binding on the maker unless it is rendered invalid by statute above referred to.

The statute invoked as a defense in this cause is sections 1960 to 1970 inclusive, of article 4, chapter 25, of Wils. Ann. Statutes, which reads:

"S. 1960: The first day of the week being by general consent set apart for rest and religious uses, the law forbids to be done on that day certain acts deemed useless and serious interruptions of the repose and religious liberty of the community."

"S. 1963. The following are the acts forbidden to be done on the first day of the week, the doing of any of which is Sabbath breaking:

"1st. Servile labor.

"2nd.    Public Sports.

"3rd.    Trades, manufactures and mechanical employ-
ments.

"4th.    Public traffic.

"5th.    Serving process unless authorized by law so to
do."

These five subjects are elaborated and defined by the
legislature in the five following sections, the 4th clause "Pub-
lic Traffic," being enlarged to read:

"All manner of public selling, or offering or exposing
for sale publicly, of any commodities upon the first day of
the week, is prohibited, etc."

The common law made no distinction between the Lord's
day and any other day.    Contracts entered into on that day
were as valid as those made on any other day.    The contract
in suit was voluntarily entered into, between parties capable
of contracting, for a lawful and valuable consideration.    It
had relation to a subject-matter about which it was lawful
for the parties to contract, and was in all respects a valid
contract, except as it is vitiated by the provisions of the stat-
ute above quoted.

The statute is a police regulation, penal in its nature
and provisions, and hence to be strictly construed.

No court ought to refuse its aid to enforce such a con-
tract as exists in this case on any doubtful or uncertain
ground.

It would hardly be profitable at this late day to discuss
the origin and purpose of this class of legislation.    It is
enough that it exists and is properly included among the
constitutional police powers of the state, and while the claim
in the case at bar is a just and legal one which no honest man
would ever repudiate, yet it grows out of as flagrant a dis-

regard and violation of the law as the ordinary transactions of daily life will admit of. It is useless to extenuate the transaction either with excuses from the surrounding circumstances, or by a strained construction of the language of the statute seek to place it beyond the purview of the law.

The enactment is not an arbitrary and ironclad regulation, but in the judgment of this court is a reasonable and proper exercise of the legislative power, in reference to a subject greatly in need of both regulation and restraint. Courts are created to administer the law, and may not palliate or excuse any infraction of it, however excusable it may appear by reason of the frequency of its violation.

The sale of the mule and the making and execution of the note was "Public Traffic," within the intent and meaning of the law, and therefore in direct violation of it, and this being granted neither party to the transaction is entitled to receive any aid at the hands of the courts, unless there shall be found something in the transaction which brings it within some one of the exceptions and reservations contained in the statute or such subsequent recognition of the contract as will work its affirmance and give it vitality.

There is nothing in the record to indicate that either of the parties belong to any class or sect of people who keep any other day of the week than Sunday as "Holy time," on which they abstain from labor and the usual vocations of life. Neither was the transaction one falling within any of the exceptions or reservations of the act. It therefore remains only to enquire whether there was such subsequent recognition and acknowledgement of debt as will amount to a new contract, and such promise to pay as will authorize the

courts to extend their aid in its enforcement, and this phase of the case is entitled to the more serious consideration because it is believed the moral sense of the. people of this territory would esteem it a morally dishonest act for a debtor to refuse to pay a just debt because the evidence of it was executed on the Lord's day. Christians may differ very widely as to the proper outward manifestations of religious faith, but they cannot differ as to what are the essential elements of honesty or dishonesty, and it is with these latter elements that temporal courts have to deal.

The record discloses that four days after the execution and delivery of the note, to-wit: on the Thursday following, the parties again met, and the plaintiff in error, with full knowledge of all the facts and circumstances connected with the transaction, at the special instance and request of defendant in error, voluntarily paid $10.00 to apply on the note then due, and upon which no action could at that time be maintained, even if it were without infirmity of any kind or nature.

This we think under the circumstances of this case, was equivalent to saying to defendant in error:

"I am justly and honestly indebted to you in the sum of $60.00 for the mule which I have already received from you, and I am willing to pay the note you hold for the same."

In the case of *Van Hoven v. Irish,* 10 Fed. 13 (Minn.) it is stated in the syllabus:

"Affirmance on a week day of a contract of bargain and sale entered into on Sunday, and void for that reason, makes it valid."

That was a case of a sale of a bunch of cattle, the sale made on Sunday and $100.00 paid on the purchase price.

21—Vol. 17

Afterwards on a week day the contract of sale was somewhat changed, and the $100.00 retained as part performance. The plaintiff brought his action upon the latter contract, claiming it was a contract made on a week day, but defendant denied that any other contract was made except the one on Sunday. The court submitted two questions to the jury, viz.:

"1. Was the contract, for breach of which damages are claimed, entered into on Sunday?

"2. If the contract was entered into on Sunday, and void by the laws of Minnesota, was it afterwards re-affirmed on a week day?" and instructed the jury:

"That by the laws of Minnesota contracts of a secular character, and which are not works of necessity or charity, if finally consummated on Sunday, are void, and no action can be maintained, either on the contract or for the recovery of whatever may have been done under the contract;" and also instructed them, "That contracts entered into on Sunday could be re-affirmed afterwards."

The court also instructed the jury:

"That the delivery of the cattle was evidence to be considered by them tending to show re-affirmance, as claimed by the plaintiff."

The jury found for the plaintiff, and on a motion for a new trial the court says:

"The Vermont supreme court and the latest authorities sustain the view taken in respect of the re-affirmance of Sunday contracts, in order, as said by Judge Redfield, to secure parties from fraud and over-reaching practice on Sunday by those who know their contracts are void, and cannot be enforced." Citing *Adams v. Gray,* 19 Vt. 358; *Harrison v. Colton,* 31 Iowa, 16.

It must conceded there is very considerable confusion and conflict in the courts of the various states as to whether

or not a contract admitted to be in violation of the Sunday law is one that can be ratified by any act of mere acquiesence, but however that may be, all are united in holding that the making of a contract on Sunday will not prevent the parties from making the same contract over on a week day, and the same thereafter being binding on the parties and enforceable by the courts, even though the Sunday transaction might have been punished as provided by the law.

Many courts, however, hold that any act which amounts to a recognition of the contract made on Sunday, will be construed to be in affirmance and ratification of the same, and thereafter binding upon the parties. See *Adams v. Gay,* 19 Vt. 385; *Williams v. Paul,* 6 Bing. Pa. 653; *Saginaw T. & H. R. Co. v. Chappell,* 56 Mich. 190; *Wilson v. Milligan,* 75 Mo. 41; *Banks v. Werts,* 13 Ind. 203; *Clough v. Davis,* 9 N. H. 500; *Harrison v. Colton,* 31 Iowa, 16; *King v. Fleming,* 72 Ill. 21.

The question here presented is before this court for the first time, and we are now called upon for a rule of law governing Sunday contracts, subsequently recognized upon a secular day. That the contract when executed was void, and not enforceable under the provisions of our statute, we do not hesitate to declare, and with reference to a subsequent recognition of the agreement on a secular day, we are of the opinion, and therefore hold, that a direct subsequent recognition of debt on a week day, which amounts at that time to an acknowledgment of indebtedness, is a new agreement, and thenceforth, binding upon the parties; and in the case now under consideration we hold that the payment of $10.00 on a secular day, upon a debt of $60.00, the price of a mule sold

on a previous Sunday, was such an acknowledgment of existing indebtedness as to amount to a contract and promise to pay at that time, and is therefore enforceable in the courts of this territory.

Finding no error in the record, the judgment of the court below will be affirmed.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.